IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIV. NO. 14-00214 JMS-RLP |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANTS' |
| | ) | MOTION FOR PARTIAL |
| vs. | ) | JUDGMENT ON THE PLEADINGS |
| | ) | |
| STATE OF HAWAII AND STATE | ) | |
| OF HAWAII DEPARTMENT OF | ) | |
| TRANSPORTATION, AIRPORTS | ) | |
| DIVISION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

## I. INTRODUCTION

On May 5, 2014, Plaintiff United States of America ("Plaintiff") filed

this action asserting claims against Defendants State of Hawaii and State of

Hawaii Department of Transportation, Airports Division (the "DOT-Airports")

(collectively, "Defendants") for violation of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e, *et seq*. Plaintiff alleges that (1) Defendants

subjected former DOT-Airports employee Sherry Valmoja ("Valmoja") to a hostile

work environment by failing to prevent and correct alleged sexual harassment by

former DOT-Airports employee Mark Morris ("Morris"), and (2) various DOT-

Airports employees retaliated against Valmoja for engaging in protected activity related to the alleged sexual harassment. Plaintiff seeks compensatory damages, front and back pay, and injunctive relief.

Defendants filed a Motion for Partial Judgment on the Pleadings, arguing that Plaintiff is not entitled to injunctive relief because (1) such relief is not appropriate in actions brought pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, but is reserved for actions alleging a "pattern or practice" of discrimination pursuant to Section 707, 42 U.S.C. § 2000e-6, and (2) even if appropriate, Plaintiff failed to allege facts that plausibly support such relief. Based on the following, the Motion is DENIED.

## II. BACKGROUND

### A. Factual Background

As alleged in the Complaint, Valmoja worked as a law enforcement canine handler, first with Akal Security, Inc. ("Akal"), under contract to the DOT-Airports to provide handlers for explosive detection dogs at Honolulu International Airport, and then as of April 1, 2009, directly for the DOT-Airports. Doc. No. 1, Compl. ¶¶ 4, 12-13. On or about March 31, 2009, Valmoja filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Akal, alleging that she was sexually harassed by Morris, her co-worker, including

2

being grabbed and hugged, referred to as "sexy" and his "brown baby," and being subjected to other unwelcome comments, contact, and sexual innuendos.  *Id.* ¶ 12.

While employed by Defendants, Morris continued to harass Valmoja. *Id.* ¶¶ 13, 16-17, 20-23.  For example, after being informed of the March 31, 2009 EEOC charge, Morris confronted Valmoja in an airport parking lot and "harassed her about her sexual harassment complaint."  *Id.* ¶ 17.  After this incident, their supervisor, Ronald Ome ("Ome"), (1) instructed Morris not to contact Valmoja or to retaliate against her; (2) reported the incident to DOT-Airports Human Resources and management; and (3) forwarded the EEOC charge against Akal to DOT-Airports management.  *Id.* ¶¶ 17-18.  Despite Ome's instruction, Morris approached Valmoja numerous times at work break areas causing her to pack up and leave, honked his horn at her, and attempted to speak with her.  *Id.* ¶¶ 20-21. And during this time, Defendants scheduled Morris and Valmoja in a manner that required Valmoja to relieve Morris at the end of his shifts.  *Id.* ¶ 19.  On December 10, 2009, Valmoja filed an EEOC charge against the DOT-Airports alleging sexual harassment and retaliation.  *Id.* ¶¶ 9, 16.

In early 2010, Morris:  (1) emailed Valmoja asking to take photos of her with his personal camera, *id.* ¶ 22; (2) abruptly changed direction while driving after spotting Valmoja on work premises, slowed down, looked at her in a

harassing manner, and drove toward her, *id.* ¶ 23; and (3) asked a co-worker explicit and intimate questions regarding Valmoja's personal relationships causing Valmoja to fear Morris. *Id.* ¶ 24. On March 19, 2010, Valmoja filed for a Temporary Restraining Order against Morris. *Id.* ¶ 25. On April 6, 2010, Morris and Valmoja reached a mediated agreement not to have any contact except for critical K-9 Programs obligations and in those situations, not to come within ten feet of each other. *Id.*

On or about July 15, 2010, Valmoja complained to Ome that Morris continuously touched and moved personal items in her office. *Id.* ¶ 26. A DOT-Airports investigator determined that Morris violated the TRO mediation agreement, and both DOT-Airports Operations Officer James Pratt, and DOT-Airports Administrative Services Officer Sydney Hayakawa recommended that Morris be terminated, stating that Morris was not likely to cease his conduct toward Valmoja. *Id.* ¶¶ 26-27. Although initially notified that he would be terminated, Morris' termination was rescinded on November 30, 2010, and he received a verbal warning and ten-day suspension without pay scheduled for January 2011.[1] *Id.* ¶ 29.

---

[1] On August 11, 2010, Valmoja filed an EEOC charge against the DOT-Airports. Doc. No. 1, Compl. ¶ 33. It is not clear whether this charge was filed before or after the DOT-Airports
(continued...)

On or about January 9, 2011, Morris drove into a facility in which Valmoja was working, stopped and made eye contact with Valmoja, and then drove his vehicle to within ten feet of Valmoja, causing her to flee. *Id.* ¶ 30. Ome reported this and other incidents to management. *Id.* ¶ 31. Morris' suspension was pushed back from January to February 18 - 27, 2011, and on March 31, 2011, Morris was terminated. *Id.* ¶ 32.

During July 2011, Valmoja informed DOT-Airports Business Services Supervisor Chris Murphy ("Murphy") of her pending EEOC complaints of sexual harassment and retaliation, and advised Murphy that she struggled at work on account of the DOT-Airports' alleged lack of corrective action. *Id.* ¶ 34. Thereafter, Murphy subjected Valmoja to disparate treatment and retaliation. *Id.* ¶ 36. For example, in July and August 2011, while Valmoja's dog was unavailable due to approved boarding acclimation training, Murphy required Valmoja to do office filing and submit a detailed report of work she performed. *Id.* ¶ 37. However, when a male co-worker's dog was unavailable due to medical reasons, Murphy did not require him to perform filing duties or submit a detailed

[1](...continued)
investigated Morris' conduct and recommended termination. However, this EEOC charge was resolved on July 13, 2011 and is not a basis for this action. *Id.*

report of his work. *Id.* ¶ 38. And on November 23, 2011, although Valmoja was medically cleared to care for her dog after a work accident, Murphy directed Ome to place Valmoja's dog in a kennel against Ome's recommendation. *Id.* ¶ 40. On November 30, 2011, Valmoja complained to Ome about these incidents and indicated that removal of her dog was related to recent activity on her EEOC charges. *Id.* ¶ 41.

After consulting with the DOT-Airports Civil Rights Officer, Rey Domingo ("Domingo"), Ome filed a complaint on Valmoja's behalf alleging retalitation based on Murphy's actions. *Id.* ¶¶ 42-43. Thereafter, the State Attorney General investigated Ome for violation of separate workplace policies. *Id.* ¶ 44. No action was taken on these charges and Ome was questioned only about the complaint he filed on Valmoja's behalf against Murphy. *Id.* ¶ 45.

In January 2012, when Valmoja contacted Domingo to inquire about the status of her complaint against Murphy, Domingo raised his voice, indicated this was not an EEO matter, and in a threatening voice, told her to "be careful." *Id.* ¶ 47. Between January and May 2012, Valmoja continued to make numerous inquiries regarding the status of her complaints against Morris and Murphy. On May 15, 2012, the DOT-Airports terminated Valmoja's employment. *Id.* ¶ 50.

Contrary to established history of allowing canine handlers to take their dogs with them upon leaving DOT-Airports employment, DOT-Airports management attempted to remove Valmoja's dog from her, and made comments about the dog being put down, causing anxiety and mental anguish. *Id.* ¶¶ 51-52. On May 25, 2012, Valmoja filed a second EEOC charge against the DOT-Airports alleging sexual harassment and retaliation. *Id.* ¶ 10.

The Complaint further alleges that although the Hawaii Department of Transportation had a sexual harassment policy dated 2008, it was ineffective -- the DOT-Airports did not provide the policy or conduct sexual harassment training to any of the canine handlers prior to May 31, 2010. *Id.* ¶¶ 54, 59. And the DOT-Airports had no EEO policy prior to January 2011, when Ome created one for the K-9 Program. *Id.* Although Defendants directed Ome to handle EEO problems within the unit, Ome had no EEO background and Defendants failed to train Ome in such matters. *Id.*

## B.    Procedural Background

After investigating the December 10, 2009 and May 25, 2012 EEOC charges, the EEOC found reasonable cause to believe that Defendants discriminated and retaliated against Valmoja and referred the charges to the United States Department of Justice. *Id.* ¶¶ 9-10.

Plaintiff filed the instant action on May 5, 2014, pursuant to Section

706 of Title VII, asserting claims for hostile work environment on the basis of sex,

and retaliation, and seeking compensatory damages, front and back pay, and the

following injunctive relief:

> A. Enjoin [Defendants] from causing, creating, or condoning a sexually hostile work environment, a retaliatory hostile work environment, or any type of retaliation;
>
> B. Order [Defendants]: (1) to take proper steps to investigate complaints of hostile work environment based on sex and/or retaliation; (2) to discipline employees found responsible for hostile work environment based on sex and/or retaliation or retaliation; (3) to adopt or supplement and distribute its anti-sexual harassment policy to all employees; (4) to prevent complainants or employees who report hostile work environment based on sex and/or retaliation or retaliation from being further discriminated against; and (5) to provide mandatory sexual harassment and retaliation training for all supervisors and employees.

*Id.* at 19-20.

On March 12, 2015, Defendants filed the instant Motion for Partial

Judgment on the Pleadings. Doc. No. 45. Plaintiff filed an Opposition on April

20, 2015, Doc. No. 57, Defendants filed a Reply on April 27, 2015, Doc. No. 59,

and on May 7, 2015, Plaintiff filed an Errata to its Opposition. Doc. No. 64.

Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition

without a hearing.

### III.  <u>STANDARD OF REVIEW</u>

A party may make a motion for judgment on the pleadings at any time after the pleadings are closed, but within such time as to not delay the trial.  Fed. R. Civ. P. 12(c).  Rule 12(c) motions are virtually identical to Rule 12(b)(6) motions, and the same standard applies to both motions.  *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (holding that Rule 12(c) and Rule 12(b)(6) motions differ in time of filing but are otherwise "functionally identical," and applying the same standard of review).

Thus, to survive such motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not

simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## IV. **DISCUSSION**

Defendants make two arguments contending that Plaintiff is not entitled to injunctive relief: First, they claim that, as a matter of law, injunctive relief is not appropriate in Section 706 actions, and is reserved for Section 707 actions alleging a "pattern or practice" of discrimination. Second, even if appropriate, they argue that the facts alleged do not plausibly support such relief. For the reasons discussed below, the court disagrees.

**A.      Injunctive Relief May Be Awarded in Section 706 Actions Even Absent a Pattern or Practice of Discrimination**

Defendants contend that by filing this action under Section 706, based on one individual's claim of discrimination and retaliation (rather than a "pattern or practice" of discrimination), Plaintiff is not entitled to the broad injunctive relief it seeks.  Rather, Defendants contend that such relief is limited to actions brought pursuant to Section 707.  *See* Doc. No. 45-1, Mot. at 5-7. Defendants are mistaken.

Section 706 of Title VII authorizes the United States to bring claims of employment discrimination on behalf of an aggrieved individual.  42 U.S.C. § 2000e-5(f)(1).  The Ninth Circuit has repeatedly held, however, that the United States may seek broad injunctive relief in such cases in order to "promote public policy and . . . vindicate rights belonging to the United States as sovereign." *E.E.O.C. v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1543 (9th Cir. 1987) ("Section 706(g) authorizes the [United States] to seek class action-type relief without complying with Fed. R. Civ. P. 23, even when it only alleges individual acts of discrimination." (citing *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 326 (1980)); *see E.E.O.C. v. Am. Home Furnishing, Inc.*, 220 F. App'x 704, 707 (9th Cir. 2007) (affirming award of injunctive relief in Section 706 suit);  *E.E.O.C. v.*

*Occidental Life Ins. Co.*, 535 F.2d 533, 537 (9th Cir. 1976), *aff'd*, 432 U.S. 355 (1977) (reversing district court's bar to injunctive relief in Section 706 action); *see also E.E.O.C. v. Creative Networks, L.L.C.*, 912 F. Supp. 2d 828, 845-847 & 845 n.8 (D. Ariz. 2012) (rejecting argument that injunctive relief is only available in Section 707 "pattern or practice" cases).[2]

And the cases that Defendants cite do not dispute this general principle. *See Cardenas v. Massey*, 269 F.3d 251, 265 & 265 n.9 (3d Cir. 2001) (affirming summary judgment in favor of employer, not because injunctive relief was inappropriate under Section 706, but rather, because the court found that the specific injunctive relief requested was not warranted by the evidence presented); *see also Spencer v. Gen. Elec. Co.*, 703 F. Supp. 466, 473 (E.D. Va. 1989) (denying motion to amend judgment awarding damages to add broad injunctive relief in light of persuasive evidence of employer's efforts to prevent future illegal conduct sufficient to show no danger of a recurrent violation). Rather, in these cases, injunctive relief was denied based on the facts. And these cases were brought by individual plaintiffs, not the United States, which acts not only on

---

[2]  Other circuits have also determined that the United States may seek broad injunctive relief in Section 706 actions, and without pleading a "pattern or practice" of discrimination. *See Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 467-68 (6th Cir. 1999); *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997).

behalf of aggrieved individuals, but also to vindicate the public interest in eradicating employment discrimination. *See Goodyear*, 813 F.2d at 1542.

In short, Section 706 allows the United States to seek broad injunctive relief even without alleging a pattern or practice of discrimination. *See Goodyear*, 813 F.2d at 1543; *Frank's Nursery & Crafts, Inc.*, 177 F.3d at 467-68; *Creative Networks, L.L.C.*, 912 F. Supp. 2d at 845-847 & 845 n.8.

## B. The Complaint Alleges Facts Sufficient to Provide a Plausible Basis for the Requested Injunctive Relief

Defendants next argue that the facts alleged in the Complaint fail to provide a plausible basis for imposition of the requested injunctive relief. More specifically, Defendants contend that the Complaint fails to allege facts showing a risk of future discrimination. The court disagrees.

"District courts have broad equitable powers to fashion relief for violations of Title VII that will eliminate the effects of past discrimination." *Bouman v. Block*, 940 F.2d 1211, 1233 (9th Cir. 1991); *see Creative Networks, L.L.C.*, 912 F. Supp. 2d at 845 ("Upon a finding of any intentional employment discrimination, a district court possesses broad discretion to craft an injunction that will ensure the employer's compliance with the law."). And the Ninth Circuit has held that to avoid imposition of an injunction once intentional employment

discrimination is found, the employer bears the burden to prove it is unlikely to engage in further discrimination. *See Goodyear*, 813 F.2d at 1544-45 (reiterating that upon proving discrimination, a plaintiff is generally entitled to injunctive relief "unless the employer proves it is unlikely to repeat the practice"); *see also Bouman*, 940 F.2d at 1233 ("A court may order injunctive relief where there are not sufficient assurances that the employer is unlikely to repeat its discriminatory actions.").

The court must assume the Complaint's factual allegations set forth above in detail are true, and construing those allegations in the light most favorable to Plaintiff, the court finds that Plaintiff has plausibly alleged incidents that could support the requested injunctive relief. Even though both Morris and Valmoja no longer work for the DOT-Airports, a sexual harassment policy was in effect at all times relevant to this action and therefore, DOT-Airport supervisors and managers might still act in the same discriminatory and/or ineffective manner in the future.

To withstand a motion for judgment on the pleadings, a complaint need only allege facts sufficient to show a *plausible* basis for the requested injunctive relief. *See Iqbal*, 556 U.S. at 678. Defendants, however, urge the court to do the opposite -- construe the Complaint in a manner most favorable to

*Defendants* to show that future discrimination is unlikely. Most certainly, Plaintiff will have to *prove* its claims, but it need not do so *now*. At this motion for judgment on the pleadings stage of litigation, Plaintiff need only allege facts that could *plausibly* support injunctive relief. And Plaintiff has done so.

## V. <u>CONCLUSION</u>

Based on the foregoing, Defendants' Motion for Judgment on the Pleadings is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 11, 2015.



```
 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge
```

*United States v. State of Hawaii, et al.*, Civ. No. 14-00214 JMS-RLP, Order Denying Defendants' Motion for Partial Judgment on the Pleadings